_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                              Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: ORDER DENYING PLAINTIFF'S MOTION TO REMAND [18]**

In this putative class action, Plaintiff Matthew Huston alleges Defendant LEGO Brand Retail, Inc. violated various provisions of the California Labor Code.  (Dkt. 1, Ex. A ("Complaint" or "Compl.").)  In particular, Plaintiff alleges claims "for: [1] Failure to pay all wages, including minimum wages, straight time, and overtime, [2] Failure to pay all overtime wages, [3] Failure to pay all wages due to illegal rounding, [4] Failure to provide meal periods and pay missed meal period premiums, [5] Failure to provide rest periods and pay missed rest period premiums [6] Failure to pay all wages earned and unpaid at separation, and [7] Violations of California's Unfair Competition Law."  (*Id.* ¶ 5; *see generally id*. ¶¶ 32-116.)  Defendant removed the case to this court, contending that the court has jurisdiction under the Class Action Fairness Act ("CAFA").  (Dkt. 1.)

Now before the court is Plaintiff's Motion to Remand, in which Plaintiff argues the court lacks subject matter jurisdiction because CAFA's amount in controversy is not met.  (Dkt. 18 ("Motion" or "Mot.").)  Defendant opposes the motion.  (Dkt. 19 ("Opposition" or "Opp.").)  Plaintiff filed a reply in support of the Motion.  (Dkt. 23 ("Reply").)  The court held a hearing on the Motion on February 12, 2026.  (Dkt. 26.)  Based on the record, as applied to the relevant law, the court **DENIES** the Motion.

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                    Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

## I.   Legal Standard

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).  CAFA generally permits a federal district court to exercise subject matter jurisdiction over a putative class action in which: (1) the amount in controversy exceeds $5,000,000; (2) the number of members of all purported classes of plaintiffs totals 100 or more persons; and (3) any member of a proposed class of plaintiffs differs in citizenship from any defendant. 28 U.S.C. § 1332(d); *Dart Cherokee*, 574 U.S. at 84-85. "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89.

To determine the amount in controversy, "courts first look to the complaint" and generally find the "sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (cleaned up).  In the absence of an amount in controversy alleged in a complaint, "a defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart Cherokee*, 574 U.S. at 87).  "When a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in controversy requirement has been satisfied.'" *Jauregui*, 28 F.4th at 992 (quoting *Dart Cherokee*, 574 U.S. at 88).  "[T]he removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." *Id*. at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).  Assumptions must have "some reasonable ground underlying them," and "may be reasonable if [they are] founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (cleaned up).

In summary, the Ninth Circuit has set forth "three principles that apply in CAFA removal cases." *Id*. at 922.  "First, a removing defendant's notice of removal 'need not contain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                    Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Id*. (quoting *Ibarra*, 775 F.3d at 1197). "Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Id*. (citing *Ibarra*, 775 F.3d at 1197-99). "Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Id*. (citing *Fritsch v. Swift Transp. Co. of Ariz*., LLC, 899 F.3d 785, 794 (9th Cir. 2018)).

After a removing defendant alleges the amount in controversy requirement is met, "the plaintiff can contest the amount in controversy by making either a 'facial' or a 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus*., *Inc*., 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, *Inc*., 974 F.3d 959, 964 (9th Cir. 2020)). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Salter*, 974 F.3d at 964 (9th Cir. 2020) (quoting *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014)). In evaluating a facial attack, "the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, 'determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.'" *Salter*, 974 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121); *see also Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."). By contrast, "[a] factual attack 'contests the truth of the . . . allegations' themselves." *Harris*, 980 F.3d at 699 (alteration in original). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id*. "Both parties may submit evidence supporting the amount in controversy before the district court rules." *Harris*, 980 F.3d at 699 (citations omitted).

## II. Discussion

In support of Defendant's calculations of the amount in controversy submitted with the Opposition, Defendant submits evidence including a declaration from Hassan Assaf, a data

3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                                    Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

expert Defendant's counsel retained to review Defendant's payroll data for all non-exempt or hourly employees from October 17, 2021, through January 4, 2026 ("Proposed Putative Class"). (Dkt. 19-2 ("Assaf Decl.") ¶¶ 2-3.)  Depending on the alleged violation of law (for example, whether the claim could be brought by current and former employees or only current employees), Defendant's data reflected that between 555 to 940 employees could be included in the calculations. (*Id.* ¶¶ 8-15.)  For example, for Plaintiff's waiting time penalties claim, Defendant estimated that 555 employees resigned or were terminated, and for Plaintiff's rest period violations claim, Defendant estimated that 940 employees may have been denied rest breaks. (*Id.*)  Defendant also estimated the Proposed Putative Class worked approximately 162,673 to 207,376 shifts depending on the alleged violation, with an average shift length of 6.19 hours and an average hourly rate of $20.47 per hour.  (*Id.* ¶¶ 6-13.)

To calculate the amount in controversy, Defendant made certain assumptions.  (*See* Assaf Decl. ¶¶ 6-13; Opp. at 14-24.)  For example, Defendant's analysis relies on its "available and complete data [which] ended on June 9, 2024, so extrapolations were needed for the [remaining statutory period through January 4, 2026]."[1]  (Assaf Decl. ¶ 6.)  Defendant also made additional assumptions regarding violation rates based on language Plaintiff used in the Complaint to describe the alleged frequency of the alleged violations.  For example, Defendant assumed a violation rate of 50% for meal and rest break violations.  (*See* Assaf Decl. ¶¶ 9-12; Opp. at 18-21.)  Based on these and other assumptions, Defendant calculates the amount in controversy as follows:

1. <u>Unpaid Wages and Liquidated Damages Claim</u>: Assuming "207,376 shifts . . . worked by California non-exempt workers . . . [and] assuming 5 minutes of unpaid

---

[1] Plaintiff argues that "Defendant has a duty to maintain the underlying documents necessary to calculate this exact figure but has represented that they presently do not possess a complete record of time and pay documents, or at the very least did not use them when calculating their unsupported amount-in-controversy figures." (Reply at 3-4.)  However, the court does not find that the data Defendant used is so unreliable or otherwise unfit for calculating the amount of controversy in this case.

4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                 Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

time per shift and using $20.47 per hour as the hourly regular rate of pay, then alleged unpaid wages are approximately **$353,762.54.**" (Assaf Decl. ¶ 13; *see* Opp. at 15-16.)  Additionally, assuming a minimum wage of $15.50, Defendant calculated that the "alleged liquidated damages are approximately **$267,871.**" (Assaf Decl. ¶ 13 (emphasis added); *see* Opp. at 16.)  Accordingly, Defendant calculates an estimated **$621,633.54** in potential liability on this claim.

2. Unpaid Overtime Claim: Assuming "48,958 pay periods worked by California nonexempt workers . . . [and] 1 hour of unpaid overtime per pay period and using $30.71 per hour as the [overtime] rate of pay, then alleged unpaid overtime wage[s] are approximately **$1,503,500.18.**"  (Assaf Decl. ¶ 14.)

3. Illegal Rounding Claim: "Assuming three minutes of unpaid time per shift due to the rounding practice and using $20.47 per hour as the hourly regular rate of pay, then alleged unpaid wages are approximately **$212,253.43**."  (Assaf Decl. ¶ 15.) Defendant also calculates liquidated damages to place an "additional **$160,716.40** in controversy."  (Opp. at 16.)  Accordingly, Defendant calculates an estimated **$372,969.83** in potential liability on this claim.

4. Meal Period Violations Claim: Assuming an estimated 162,673 shifts "worked by California non-exempt workers that were over five hours" and "[a]ssuming a 50% meal period violation rate and using $20.47 per hour as the hourly regular rate of pay, the alleged unpaid meal period premiums are approximately **$1,664,968.39**."  (Assaf Decl. ¶ 14) (emphasis added).

5. Rest Period Violations Claim: Assuming approximately 203,029 shifts worked and "[a]ssuming a 50% rest break violation rate and using $20.47 per hour as the hourly regular rate of pay, then alleged unpaid rest break premiums are approximately **$2,078,012.**"  (Assaf Decl. ¶ 12) (emphasis added).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                    Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

6. <u>Waiting Time Penalties Claim</u>: "Assuming all 555 former employees are entitled to waiting time penalties for 30 days, the waiting time penalties are approximately **$2,109,721.5[0].**" (*Id.* ¶ 8) (emphasis added).

7. <u>Attorneys' Fees</u>: Assuming that "25% of the alleged amount in controversy for Plaintiff also represents a fair estimation of the fees in controversy," and applying that percentage to the total amount in controversy based on the foregoing amounts of **$8,350,805.49,** Defendant includes in the amount-in-controversy calculation attorney fees of **$2,087,701.37**. (Opp. at 23-24.)

In summary, Defendant calculates an amount in controversy of **$10,438,506.86**, after applying the estimated violation rates in Defendant's Notice of Removal, as supported by the Assaf Declaration, which Defendant maintains demonstrates that the "amount in controversy is double the jurisdictional threshold of $5,000,000." (*Id.* at 25.)

Plaintiff, in contrast, argues that Defendant's estimated ranges of the number of employees, number of shifts worked, and number of pay periods "are both speculative and filled with conjecture," maintaining that a 20% violation rate using Plaintiff's hourly rate of pay rather than an average rate of pay is more appropriate. (Mot. at 6-10.) Based on these arguments, Plaintiff contends that the amount in controversy is more appropriately calculated at **$4,573,099.** (*Id.* at 10.)

As stated, "a damages assessment may require a chain of reasoning that includes assumptions," although such "assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F. 3d at 925; *see LaCross*, 775 F.3d at 1202 (characterizing the allegations of the complaint "[a]s our first source of reference in determining the amount in controversy"). In fact, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the

6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                         Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

violation rate by looking at the plaintiff's complaint." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).

In this case, the Complaint alleges "Defendants on *occasion* required the members of the Wage Class to perform work-related tasks before clocking in," "[o]n *one or more occasions*, the members of the Meal Period Class worked over five hours per shift," and "[a]s a matter of Defendants' established company policy, Defendants failed to always authorize and permit all required rest periods." (Compl. ¶¶ 40, 80, 94.) Based on these characterizations, Defendant made the assumptions described above, including a 50% violation rate for meal and rest breaks. (*See* Assaf Decl. ¶¶ 12-4; Opp. at 18-21.) The Complaint's language, which chiefly identifies only that violations of the law have occurred without indicating a reasonably specific frequency, is not so limiting as to make Defendant's assumptions unreasonable. The court concludes that Defendant's assumptions supporting its calculation of the amount in controversy are reasonable and sufficiently supported by evidence. *See Arias*, 936 F.3d at 926 (finding sufficient evidence when "Marriott's notice of removal included personnel and payroll data (e.g., number of employees meeting class description, average rate of pay, and number of workweeks worked during the class period)"; "[w]ith that data, Marriott estimated the amount in controversy by making assumptions about the frequency of violations of the sort alleged in the complaint"; and "Marriott tied its assumed violation rates to the complaint"); *see, e.g.*, *Mills v. Rescare Workforce Servs.*, 2022 WL 843461, at *9 (C.D. Cal. Mar. 22, 2022) ("The court finds Defendants' assumptions are plausible and present a reasonable estimate of Defendants' maximum potential liability and the maximum damages the putative class could reasonably recover."); *Avila v. Northwood Hosp. LLC*, 2024 WL 416366, at *4 (C.D. Cal. Feb. 5, 2024) (denying motion to remand when the defendant's calculation of amount in controversy in wage-and-hour class action was supported by the allegations in the complaint). "[B]ecause [D]efendant[] relied on a reasonable chain of logic and presented sufficient evidence to establish that the amount in controversy exceeds $5 million, [Defendant has] met [its] burden of proof." *LaCross*, 775 F.3d at 1201.

The court is not persuaded by Plaintiff's arguments to the contrary. To arrive at an amount in controversy below $5,000,000, Plaintiff uses his hourly rate of $17.70 rather that the average hourly rate of $20.47 that Defendant used. (*See* Mot. at 6-10; Assaf Decl. ¶ 8.) But

7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02693-FWS-ADS                    Date: February 12, 2026
Title: Matthew Huston v. LEGO Brand Retail, Inc.

courts in this district "routinely assume members of a putative class earned the average hourly rate when calculating the amount in controversy on wage-and-hour claims." *Gallegos v. Atria Mgmt. Co., LLC*, 2016 WL 11824848, at \*3 (C.D. Cal. Aug. 4, 2016) (citing *Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at \*4-5 (S.D. Cal. July 2, 2015); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at \*6 (C.D. Cal. May 21, 2015)).  The court is persuaded by these cases and therefore finds that applying the Proposed Putative Class's hourly rate is an appropriate and reasonable metric for analysis.  Indeed, recalculating the amount in controversy using Plaintiff's more conservative violation rates with the average class hourly rate rather than Plaintiff's own hourly rate, would increase Plaintiff's estimated amount in controversy of $4,573,099 to $5,259,063.85,[2] sufficient to meet the jurisdictional threshold of $5,000,000.  (*See* Mot. at 10.)

### III.    Disposition

For the foregoing reasons, the Motion is **DENIED**.

---

[2] ($20.47 ÷ $17.70 = ~1.156); (1.156 \* $4,573,099.00 = $5,286,502.44)